UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:14-CR-00031-TBR

UNITED STATES OF AMERICA                                                     Plaintiff,

v.

DEMETRUS LAMONT DAVIS, *et al.*                                    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon three motions of the Defendants. First, Defendant Corey Thompson moves to compel the disclosure of all discoverable and exculpatory evidence relevant to his upcoming prosecution. (Docket No. 26.) Defendant Demetrus Davis has also submitted two motions, the first seeking the identity of a confidential informant, (Docket No. 31), and the second seeking the disclosure of "all deals, benefits, inducements and plea bargains afforded any witness against [him]," (Docket No. 32). The United States has responded to Davis's motions, (Docket Nos. 35 & 36). Being sufficiently advised, the Court will address each motion in turn.

### I. Thompson's Motion for Release of Brady Materials

Thompson seeks to compel the Government to disclose the statements of adversarial witnesses expected to testify at trial. He also seeks disclosure of all evidence regarding his own statements documented by law enforcement that may be admitted and other statements and documentation relevant to the case's presentation at trial. Finally, Thompson notes the Government's pretrial obligation to disclose all negating or mitigating evidence to criminal defendants. Specifically, his motion focuses upon an informant who has purportedly cooperated with law enforcement. Thompson seeks information to include the informant's prior felony convictions, prior contradictory statements or testimony "which

1

differs from evidence obtained by law enforcement regarding [Thompson] during the investigation of this case," and information impeaching the informant's credibility. (Docket No. 26 at 2-3.)

The Court's Memorandum Opinion regarding Davis's Motion for Production of Favorable Evidence, (Docket No. 33), addresses much of the evidence to which Thompson claims he is entitled. *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny define the scope of the Government's obligation to "turn over material that is both favorable to the defendant and material to guilt or punishment." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994). "Materiality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." *Id.* (citing (*United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976)). Moreover, the Government's obligation includes a duty to disclose evidence that could be used to impeach a witness's credibility when his reliability "may be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154-55.

"[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to adequately comply with a discovery order requiring it to disclose *Brady* material, it acts at its own peril." *U.S. v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). If the prosecution denies any such exculpatory material exists, the defense has no "general right to pre-trial discovery of evidence impeaching defense witnesses." *Id.* at 1283.

In this case, the Government has assured the Court that it recognizes its disclosure obligations pursuant to *Brady* and *Giglio* and will fulfill such responsibilities. To the extent that the information Thompson requests falls under such doctrines, the Government need not provide such information at this juncture. *See* 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); *Presser*, 844 F.2d at 1281 ("[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of

2

a fair trial.") (quoting *U.S. v. Bagley*, 473 U.S. 667, 675 (1985)). The Government shall comply with its *Brady* requirements "in time for [their] 'effective' use at trial." *Id.* at 1283. However, the Court strongly encourages early disclosure.

## II. Davis's Motion to Compel the United States to Disclose Confidential Informant

Davis echoes Thompson's concerns regarding the confidential informant, urging the Court to compel the Government to disclose the confidential informant's identity. (Docket No. 31.) He relies upon *Roviaro v. United States*, 353 U.S. 53 (1977), wherein the Supreme Court discussed the scope of the "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59. The *Roviaro* defendant repeatedly demanded disclosure of the informant's identity, but the Government neither made such a disclosure nor called the informant as a trial witness. *Id.* at 56, 65. Accordingly, the defendant lacked an opportunity to cross-examine the informant. Under these circumstances, the Supreme Court held, the district court erred in permitting the Government to withhold the informant's identity.

*Roviaro* acknowledged the Government's privilege to withhold the identity of confidential informants, but noted the privilege's limits. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 61(citations omitted). The *Roviaro* rule, however, does not confer an absolute right to disclosure. To the contrary, the Supreme Court emphasized the fact-specific nature of a district court's analysis.

> We believe no fixed rule with respect to disclosure if justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62.

The Sixth Circuit confronted similar circumstances in *United States v. Perkins*, 994 F.2d 1184 (6th Cir. 1993). The *Perkins* defendant moved for a bill of particulars seeking a confidential informant's identity. *Id.* at 1190. The trial court denied this motion, and the informant testified at the defendant's trial. On appeal, the Sixth Circuit maintained that the trial court did not abuse its discretion in declining to compel the pretrial disclosure of the informant's identity. *Id.* at 1191. The court distinguished *Perkins* from *Roviaro*, noting that the *Perkins* informant appeared at trial, testified, and submitted to the rigors of cross-examination. Emphasizing these differences, the Sixth Circuit explained:

> [T]he government identified [the informant] by name in its opening statements. She was then called as a witness and subjected to extensive cross-examination. Defendant did not object to her testimony or request a continuance on grounds of unfair surprise. In these circumstances, the district court did not abuse its discretion in denying defendant Perkins' motion for a bill of particulars. Defendant was no more unfairly surprised by the testimony of [the informant] than he would have been by the testimony of any other government witness whose name had not been divulged to him prior to trial.

*Id.*

Davis analogizes his own case to *Roviaro*, arguing that both cases concern an informant who adopted "a material part in bringing about the possession of certain crimes by the accused." *Roviaro*, 353 U.S. at 55. Indeed, the Government does not contest that the informant helped set up the commission of the offense and was present as it occurred. Accordingly, Davis argues that fairness demands disclosure of the informant's identity and any potentially exculpatory information in the instant case. (Docket No. 31 at 1.) He directs the Court to the transcript of Kenneth Stengel's testimony at Davis's detention hearing. According to Davis, Stengel testified that in an unrecorded call, the informant asked whether Davis would be interested in acquiring guns. (Docket No. 31 at 1-2.) Davis further notes that no Government agents witnessed the transaction wherein the informant allegedly sold the guns to Davis; instead, the guns were found in a duffel bag immediately after the informant left Davis's car. Like *Roviaro*, the informant here is "the only witness who might have testified to [Davis's] possible lack of knowledge of the contents of the package"—or here, the duffel bag. *Id.* at 64.

Significantly, though, *Roviaro* concerned an informant who never testified, whereas the Government avers that it plans to call the informant as a witness in Davis's trial. (*See* Docket No. 35 at 1.) This crucial difference distinguishes the instant case from *Roviaro* and compels a different outcome. The Sixth Circuit and its lower courts have held that the Government need not issue a pretrial disclosure of an informant who will testify at trial. *See, e.g.*, *United States v. Perkins*, 994 F.2d 1184, 1190-91; *United States v. Brice*, 2009 WL 2043554 at *1 (W.D. Ky. July 9, 2009). In light of this principle, the Court is confident that neither Thompson nor Davis will be taken by surprise by the informant's testimony; each will enjoy the rights to confrontation and rigorous cross-examination.

Moreover, "[m]ere speculation about the possible usefulness of an informant furnishes a court with nothing to balance against maintenance of the privilege." *United States v. Bryant*, 951 F.2d 350, 1991 WL 256555, at *5 (6th Cir. 1991). Neither defendant has set forth any evidence that the informant could support his defense; rather, both Davis and Thompson merely wish to determine whether the informant could be helpful to their cases. "Mere speculation about the possible usefulness of an informant furnishes a court with nothing to balance against maintenance of the privilege." *Id.*

For these reasons, the Court concludes that the Government need not disclose the informant's identity prior to the trial. Therefore, the Court must deny Davis's motion to compel such disclosure, (Docket No. 31).

### III. Davis's Motion for Disclosure of All Deals, Benefits, Inducements, and Plea Bargains

Davis's second motion seeks the disclosure of all benefits and/or inducements afforded to any witness against him, pursuant to *Davis v. Alaska*, 415 U.S. 308, 320 (1974) and *Brady v. Maryland*, 375 U.S. 83 (1963). In addition, he asks for the criminal history and pending charges of any witness against him, as well as any potentially exculpatory statements made to the Government by any witnesses. He specifically notes the import of this information as it relates to the confidential informant discussed above.

5

The Government responds that it continues to recognize its obligation to disclose such evidence in time for use at trial. This acknowledgement remains sufficient, rendering Davis's motion moot. *See Presser*, 844 F.2d at 1283 ("Preserving the defendant's ability to defend himself effectively at trial is the underlying purpose of the criminal discovery rules. Therefore, so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated.").

## CONCLUSION

For the reasons explained above, IT IS HEREBY ORDERED as follows:

1. Thompson's Motion for Release of Brady Materials, (Docket No. 26), is DENIED.

2. Davis's Motion to Compel the United States to Disclose Confidential Informant, (Docket No. 31), is DENIED.

3. Davis's Motion for Disclosure of All Deals, Benefits, Inducements, and Plea Bargains Given to Any Witness Against Him, (Docket No. 32), is DENIED.